# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FROEDTERT SOUTH, INC.,

        Petitioner,

v.

CHRISTOPHER STONE,

        Respondent.

Case No. 23-CV-1702-JPS

**ORDER**

## 1. INTRODUCTION

Dr. Christopher Stone ("Stone"), the Respondent in this case, formerly worked as a physician for Petitioner Froedtert South, Inc. ("Froedtert"). ECF No. 25 at 2–3. Beginning in 2020, Froedtert and Stone arbitrated a dispute about whether Stone had violated his employment agreement with Froedtert. *Id.* at 3. Froedtert ultimately prevailed at arbitration, and Stone was ordered to pay back over $1.3 million in compensation and to pay Froedtert's attorneys' fees, which totaled over $900,000. ECF No. 1-3.

Now before the Court are several fully-briefed motions and requests. Froedtert commenced this case in December 2023 by filing a petition to confirm the arbitration award, ECF No. 1, to which Stone filed an "answer and affirmative defenses," ECF No. 14, and Froedtert replied, ECF No. 15. In March 2024, Stone moved to vacate or modify the arbitration award, which is also fully briefed. ECF Nos. 16/24, 17/25,[1] 21, and 29.

---

[1]ECF Nos. 16 and 17 are the unredacted versions of Stone's motion and supporting brief, which Stone originally filed publicly but which are now under

As explained herein, Stone's motion to vacate or modify the arbitration award will be denied, and Froedtert's petition to confirm the award will be granted.

## 2. FACTUAL AND PROCEDURAL BACKGROUND[2]

### 2.1 Stone's Employment with Froedtert

Stone is a cardiothoracic surgeon who, over many years, built a cardiac surgery program at the hospital system that eventually became known as Froedtert South. Stone eventually left Wisconsin and practiced in other states, but in January 2019 he entered into a new Physician Employment Agreement with Froedtert (the "Agreement"). *See* ECF No. 1-1. The Agreement provided that Stone would work at Froedtert full-time for five years at a base salary of $1 million per year. *Id.* at 1–2 (specifying duties), 6 (specifying salary and that Stone would serve as Medical Director of the Michael E. DeBakey Heart Institute of Wisconsin (the "Heart Institute")). The Agreement further provided in paragraph 1.4 that Stone

_____

temporary restriction and viewable only to case participants because they are subject to a later-filed motion to restrict, ECF No. 23. The motion and brief are publicly available in redacted form at ECF Nos. 24 and 25. When citing to specific parts of Stone's motion and brief, the Court cites to the redacted versions. Likewise, where other submissions are subject to motions to restrict, the Court cites where possible to the redacted, publicly-available versions of those submissions.

This Order will be publicly accessible, *see infra* Section 4, and includes some facts from restricted submissions, but only those necessary to the disposition of the case. The Court cites to redacted submissions in order to facilitate public access to the parties' arguments. (As a side note, Stone's opening brief, ECF No. 25, is almost entirely redacted, which is inappropriate. The Court summarizes and repeats his arguments herein even though he has attempted to obscure them almost in their entirety.)

[2] The Court draws this summary from the parties' submissions, omitting citations where facts are undisputed or provided for background purposes, and citing to the record of the underlying arbitration proceedings where appropriate.

would not engage in any outside medical business or practice activity without Froedtert's consent and that any medical fees he collected would accrue to Froedtert unless it authorized Stone to keep them. *Id.* at 2. Finally, the Agreement required that certain disputes arising in Stone's employment be submitted to the American Arbitration Association ("AAA") and governed by the AAA Employment Arbitration Rules, and that "[t]he award and findings of such arbitrator shall be conclusive and binding . . . ." *Id.* at 11–12.

Stone began working at Froedtert under the Agreement on April 15, 2019. Shortly after beginning his employment, however, Stone began to be absent from Froedtert for days at a time. The reason for Stone's absences (as later determined in arbitration) was that, between April and August 2019, "Stone continued working at his [previous] full-time Florida job . . .[,] attempting to simultaneously fulfill two separate contracts for full-time employment with two separate employers in two different states." ECF No. 1-5 at 5–6. Stone's absences during this time required Froedtert to hire temporary cardiac surgeons on a *locum tenens* (i.e., temporary) basis to perform medical services in Stone's place. In early August 2019, at Stone's request, Froedtert began temporarily paying Stone on a work relative value unit ("WRVU") basis instead of a fixed salary basis—effectively, a reduced pay amount to make up for Stone's absences from Froedtert. ECF No. 1-5 at 9 & n.3.

In late August 2019, Froedtert suspended Stone's medical privileges and sent Stone a letter asserting that he was in breach of the Agreement. Stone resigned from Froedtert in September 2019. Froedtert hired his full-time replacement in January 2020, engaging cardiac surgeons on a *locum tenens* basis in the intervening months. *Id.* at 8, 19 & n.5.

### 2.2 Arbitration

Based on the above events and pursuant to the Agreement,[3] the parties entered arbitration, with Froedtert raising breach of contract claims against Stone and Stone counterclaiming for wrongful discharge. *Id.* at 2–3. Mark A. Frankel ("Frankel") of the AAA Employment Arbitration Tribunal, a retired judge, presided over the matter. The parties engaged in discovery and arbitration hearing preparation from mid-2020 through early 2023. An arbitration hearing took place from March 6 to 10, 2023, after which Frankel issued several decisions, discussed in detail later.

Froedtert's initial specification of claim, dated in October 2020, sought several categories of damages for Stone's alleged breach. As relevant here, it sought the gross wages (both WRVU wages and salary) that Stone received while employed, and over $1 million in expenses that Froedtert incurred to hire *locum tenens* physicians from April 15, 2019 when Stone began work through early 2020 when Stone's replacement was hired (well after Stone had resigned from Froedtert). ECF No. 19-2 at 3–4. In the present case, Stone challenges aspects of the damages that Frankel awarded in the latter category—*locum tenens* damages. ECF No. 25 at 10–16, 21–23.

Stone also challenges the consideration of and ultimate award of an additional category of damages—the income that Stone earned while employed full-time at a medical center in Florida at the same time he was under contract with Froedtert—on the basis that this category of damages was not disclosed until the eve of the arbitration hearing. *Id.* at 5–6, 17–21. Froedtert asserted this category of damages in its pre-arbitration brief,

---

[3]Froedtert also sought to compel arbitration, which petition was granted. *Froedtert South, Inc. v. Christopher Stone*, No. 20-CV-11, ECF No. 9 (E.D. Wis. May 1, 2020).

which it served on Stone five days before the arbitration hearing was set to begin. ECF No. 19-4 at 3, 11, 14, 15, 25. At the hearing, Stone objected to the inclusion of this category of damages, citing "the AAA discovery protocols." ECF No. 19-1 at 2. After hearing arguments from both sides on the objection, Frankel stated that it was unclear to him whether the late disclosure of this category of damages was actually prejudicial to Stone and accordingly reserved ruling on the objection until "the end of the case," *id.* at 6, permitting Froedtert to present evidence on this category of damages during the hearing.

Frankel issued a decision and interim award in July 2023; an order modifying the interim award in August 2023; a second interim award of attorneys' fees in September 2023; and a final award in December 2023. ECF Nos. 1-5, 1-9, 1-4, 1-3.

In addition to dismissing Stone's wrongful termination counterclaim, Frankel found that Stone breached the Agreement and that Froedtert had proved the following damages:

- $180,961.39 in net wages and benefits paid to Stone;

- $849,331.75 in expenses that Froedtert incurred to hire *locum tenens* physicians "as a result of Stone's breach of contract"; and

- $312,230.78[4] in income that Stone received from the Florida medical center where he worked while also under contract for Froedtert.

ECF No. 1-5 at 29, 31.

---

[4] Frankel's interim order gave two different figures for this amount: $312,230.78 and $360,738.39. ECF No. 1-5 at 29, 31. The higher number was determined to be a typographical error. ECF No. 1-9 at 3. This amount of damages, and the total damage award, were decreased accordingly. *Id.*

With respect to his decision to include Stone's Florida income among the damages to which Froedtert was entitled, Frankel explained that this income "accrued to Froedtert, per the express terms of [the Agreement]," which provision was "not in dispute." *Id.* at 19–20 (citing "Section 1.4" of the Agreement). Frankel further found that "Stone failed to articulate how the late disclosure of this item of damage prejudiced him in his defense to the arbitration claim" and that "[t]he amount of salary and benefits Stone earned in Florida . . . is also largely not in dispute." *Id.* at 20.

Frankel offset these damages by $42,190, the amount that Stone received for working as the Medical Director of the Heart Institute. *Id.* at 31; *id.* at 32–33 (explaining this offset). The damage award therefore totaled $1,300,333.92.[5] ECF No. 1-9 at 3. Frankel later determined that Froedtert was also entitled to its attorneys' fees in the amount of $922,066.47. ECF No. 1-3 at 2. Within a few weeks of Frankel's final award in December 2023, Froedtert petitioned the Court to confirm the arbitration award. ECF No. 1. Stone's motion to vacate followed in March 2023. ECF No. 16/24.

The Court will include additional facts from the arbitration proceedings in its below analysis as relevant to the parties' arguments.

3.    LAW AND ANALYSIS: ARBITRATION

At the outset, Froedtert insists that "[c]onfirmation proceedings are intended to be summary and routine" and implicitly invites the Court to disregard Stone's motion to vacate entirely. ECF No. 15 at 1–2 ("The Court should not permit Stone to have a second bite at the apple to respond to the

_____

[5]For reasons unknown, Frankel's final award repeats the same typographical error he earlier corrected in his order on Stone's motion to modify, awarding $1,348,841.53 in damages (which includes the incorrect, higher amount of Stone's Florida employment income), ECF No. 1-3 at 1, rather than the $1,300,333.92 that Frankel determined to be the correct total. ECF No. 1-9 at 3.

Petition by way of a motion to vacate."). True, the Court "must grant" a petition to confirm an arbitration award—"*unless* the award is vacated, modified, or corrected," 9 U.S.C. § 9 (emphasis added), which is exactly what Stone asks the Court to do. Stone's motion to vacate or modify was timely; Froedtert makes no argument that it was untimely. *See* 9 U.S.C. § 12 (providing that such motions must be filed "within three months after the award is filed or delivered" by the arbitrator).

Though Froedtert won the race to the courthouse with its petition to confirm the arbitration award—and even though Stone filed an "answer and affirmative defenses" to Froedtert's confirmation petition before filing his motion to vacate or modify—that does not mean that Froedtert automatically wins the entire dispute now before the Court or that the Court need not consider Stone's motion on its merits. *See J&J Sports Prods. Inc. v. Toetz Enters. LLC*, No. 15-CV-1411-JPS, 2017 WL 6622548, at *1 (E.D. Wis. Dec. 28, 2017) ("[W]hile arbitration is indeed binding, the very purpose of the Federal Arbitration Act ("FAA") is to permit certain limited challenges to arbitration decisions." (citing 9 U.S.C. §§ 10–11 and *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008))). The Court therefore begins by analyzing Stone's motion.

### 3.1    Motion to Vacate or Modify Arbitration Award

Stone seeks full vacatur of Frankel's arbitration award under 9 U.S.C. § 10(a)(4). ECF No. 24 at 1; ECF No. 25 at 1. This provision permits the Court to vacate an arbitration award "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Stone also briefly references 9 U.S.C. § 10(a)(3). ECF No. 25 at 7. This provision allows for vacatur in instances "where the arbitrator[] w[as] guilty of misconduct . . .

[due to] misbehavior by which the rights of any party have been prejudiced."[6] In the alternative, Stone seeks modification of the award under 9 U.S.C. § 10 or § 11. ECF No. 24 at 1; ECF No. 25 at 2.

Stone argues that vacatur or modification is necessary for several reasons. First, he argues that Frankel's decision to award Froedtert damages for all expenses it paid to retain *locum tenens* physicians "without any offset for . . . Stone's unpaid salary and benefits" after he left Froedtert was in "manifest" or "deliberate[]" disregard of Wisconsin contract law and in violation of Wisconsin public policy against double recovery. ECF No. 25 at 7, 10, 11–16. Second, he argues that Frankel's decision to allow Froedtert to pursue Stone's Florida income as damages violated governing AAA rules and tenets of due process. *Id.* at 10, 16–21. He requests that this matter be remanded for "rehear[ing] by a different arbitrator" who can "address unresolved factual issues" with respect to damages. *Id.* at 1–2, 23. Alternatively, he argues that if vacatur is not granted, the award should be modified to eliminate both of the above-referenced categories of damages because they "resulted directly from [Frankel's] misconduct." *Id.* at 21–23.

### 3.1.1 *Locum Tenens* Damages

The parties both acknowledge that the bar for vacating an arbitrator's award is high. ECF No. 25 at 1 ("This case presents the rare situation in which an arbitrator so blatantly and materially exceeded his powers that vacatur is warranted."); ECF No. 21 at 9 (quoting *Standard Sec. Life. Ins. Co. of N.Y. v. FCE Benefit Admins.*, 967 F.3d 667, 671 (7th Cir. 2020) ("Judicial review of arbitration awards is tightly limited. . . . [A] court will

---

[6] Stone does not cite this specific provision at any other point in his briefing but does refer to Frankel's "misconduct" at several points and argues that he was prejudiced by it. ECF No. 25 at 1–2, 21–22.

set aside an arbitration award only in very unusual circumstances." (citations and internal quotation marks omitted))). Beyond this, they disagree on the exact meaning of the applicable standard of review as it applies to Stone's argument for vacatur of the *locum tenens* damages award, in two respects: first, the scope of the so-called "manifest disregard" or "deliberate disregard" standard, and second, whether public policy is a recognized basis for vacatur. The Court takes up each of these disputes in turn and then applies the standards to Stone's arguments.

### 3.1.1.1   "Manifest Disregard"

Stone argues that the Seventh Circuit's decision in *Renard v. Ameriprise Financial Services, Inc.*, authored in 2015 by Judge Diane Wood and joined by Judges Frank Easterbrook and Diane Sykes, is the controlling precedent on this point. ECF No. 25 at 7 (citing 778 F.3d 563 (7th Cir. 2015)). In *Renard*, the Seventh Circuit stated that an arbitral award may be vacated under 9 U.S.C. § 10 "if 'the arbitrator deliberately disregards what he knows to be the law,'" also termed "manifest disregard of the law." 778 F.3d at 567 (quoting *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994) and citing *George Watts & Son, Inc. v. Tiffany and Co.*, 248 F.3d 577, 579–81 (7th Cir. 2001)). Deliberately disregarding Wisconsin contract law, Stone says, is exactly what Frankel did when he awarded Froedtert damages for its *locum tenens* expenses. ECF No. 25 at 11–15.

Froedtert, on the other hand, points to *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, a 2017 decision authored by Judge Easterbrook and joined by Judges Ilana Rovner and David Hamilton, as providing the latest and greatest statement on the subject. ECF No. 21 at 10 (citing 876 F.3d 900 (7th Cir. 2017)). Examining § 10(a)(4)—the primary statutory basis of Stone's motion to vacate, *see supra* Section 3.1—the *Hyatt* court stated that

this subsection "does not make legal errors a ground on which a judge may refuse to enforce an [arbitration] award." 876 F.3d at 902 (citing *Watts*, 248 F.3d 577 and *Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, 660 F.3d 281 (7th Cir. 2011)). Under this guidance, in Froedtert's estimation, any error Frankel may have made in applying Wisconsin contract law cannot be a basis for vacatur. ECF No. 21 at 15–17.

The parties further dispute the ongoing relevance of *Watts*, a 2001 case that both *Renard* and *Hyatt* cite. 778 F.3d at 567–58; 876 F.3d at 902. Judge Easterbrook—the common denominator in this trilogy of cases—also authored *Watts*, stating that "the 'manifest disregard' principle [for vacatur] is limited to two possibilities: an arbitral order requiring the parties to violate the law . . . , and an arbitral order that does not adhere to the legal principles specified by contract." *Watts*, 248 F.3d at 581. Froedtert argues that Judge Easterbrook's citation to *Watts* in *Hyatt* suggests that the more limited view of the manifest disregard standard prevails. ECF No. 21 at 12 ("The *Hyatt* court does not cite *Renard*, but does cite and rely extensively on *Watts*."). Stone, on the other hand, argues that the *Renard* court's citation to *Watts* with a "*see*" signal and analysis of whether the arbitrator followed the relevant substantive law (as opposed to solely analyzing "whether the arbitrator directed the parties to violate the law") means that the Seventh Circuit has backed away from *Watts*' more restrictive view and embraced deliberate disregard of the law as a possible basis for vacatur. ECF No. 29 at 3–4; *id.* at 5 ("The *Hyatt* court did observe . . . that 'arbitrators exceed their powers under § 10(a)(4) if they order the parties to violate the rights of persons who have not agreed to arbitrate,' . . . 876 F.3d at 903, but this is just *one* possible ground to find an arbitrator exceeded his power."). Deliberate disregard of controlling law can justify vacatur, Stone argues, if it is

something more than "simple error[] of law." *Id.* at 6 (citing *Eljer*, 14 F.3d at 1254).

The Seventh Circuit designated both *Renard* and *Hyatt* as precedential opinions. It is clear to the Court that these two cases examine the same point of law: whether an arbitral decision that does not follow the applicable substantive law is subject to vacatur either under 9 U.S.C. § 10 or under a "manifest disregard" standard rooted in some source other than statute. *Hyatt*, 876 F.3d at 902 ("Shen Zhen contends that the award disregards federal and state franchise law and therefore should be set aside under 9 U.S.C. § 10(a)(4), which covers situations in which 'the arbitrators *exceeded their powers* . . . .'" (quoting § 10(a)(4) (emphasis added)); *Renard*, 778 F.3d at 567 (discussing "deliberate[] disregard[]" under 9 U.S.C. § 10) and 568 ("Renard . . . contends that the arbitrators *exceeded their power* by failing to apply the [Wisconsin Fair Dealership Law] to these facts." (emphasis added)).[7] But the mere fact that *Hyatt* is the more recent opinion does not necessarily resolve the issue of which case sets forth the controlling view of the law, because *Hyatt* does not cite or engage with *Renard*.

Indeed, the present state of case law on the "manifest disregard" standard for vacatur (whether based on § 10(a)(4)'s prohibition on arbitrators exceeding their powers, some other subsection of § 10, or common law) strikes the Court as conflicted. There is no easy answer on how to piece *Renard* and *Hyatt* together, and each party's position finds support in them respectively. However, the Court—after reviewing *Renard*,

---

[7]Stone briefly argues that *Hyatt* does not deal with the manifest disregard standard at all and therefore has no bearing on this case. ECF No. 29 at 3 ("*Hyatt* does not mention the manifest disregard standard, let alone alter it."). But *Hyatt* deals with 9 U.S.C. § 10(a)(4), the vacatur provision on which Stone relies—so *Hyatt* is obviously relevant to this case.

*Hyatt*, *Watts*, and other related authorities—finds that the weight of the case law favors Froedtert's reading of the standard. The Court briefly catalogs the appellate decisions that influenced this finding.

Stone relies on *Eljer* as providing the "correct rule," ECF No. 29 at 4, and it is true that this case explicitly notes that vacatur is appropriate when "the arbitrator deliberately disregards what he knows to be the law." *Eljer*, 14 F.3d at 1254 (citing *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992)). But the very next sentence in the opinion reads as follows: "[e]rrors in the arbitrator's interpretation of law or findings of fact do not merit reversal under this standard." *Id.* (citing *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957 (7th Cir. 1993) and *Moseley, Hallgarten, Estabrook, & Weeden v. Ellis*, 849 F.2d 264 (7th Cir. 1988)). The opinion goes on to state that "mere error in the interpretation of the law (as opposed to failure to decide in accordance with relevant provisions of law) does not provide grounds for disturbing an arbitration award." *Id.* at 1256 (citing *Health Servs.*, 975 F.2d at 1267). At bottom, this case does not favor Stone.

*Watts* provides in-depth discussion of the "manifest disregard" standard for vacatur. This opinion first notes that "[a]n error of law is not a ground listed in 9 U.S.C. §§ 10 or 11 for vacating or modifying an award," but accepts that "in dictum the Supreme Court has suggested that an arbitrator's 'manifest disregard' of legal rules justifies judicial intervention." *Watts*, 248 F.3d at 578 (citing *Wilko v. Swan*, 346 U.S. 427, 436–37 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989)). "Manifest disregard of the law" can exist under § 10(a)(4)'s prohibition on an arbitrator exceeding his power if, for example, "the parties specify that their dispute is to be resolved under

Wisconsin law, then an arbitrator[] declar[es] that he prefers New York Law . . . ." *Id.* at 578–79. It can also exist "when the arbitrator has commanded the parties to violate legal norms." *Id.* at 580. But the *Watts* majority rejects the notion that "there is a broader extra-statutory principle authorizing courts to review arbitrator's legal rulings," even for "'clear' error" or a "blatant . . . legal mistake." *Id.* at 579 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399–405 (1990)).[8] *Watts*, therefore, appears consistent with *Eljer*: both hold that a district court may review an arbitrator's failure to apply the correct body of law (or an arbitrator's directive that the parties violate the law), but not an arbitrator's interpretation of the applicable law.

*Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*—also a Judge Easterbrook opinion—states point-blank that although "[s]ome decisions of this circuit after . . . *Watts* . . . have implied that 'manifest violation of law' has some different or broader content, . . . 'manifest disregard of the law' is not a ground on which a court may reject an arbitrator's award" "[e]xcept to the extent recognized in . . . *Watts*." 660 F.3d at 285 (collecting cases). *Affymax* then restates the *Watts* court's finding that "despite the limited scope of § 10(a), a court may set aside an award that directs the parties to violate the legal rights of third persons who did not consent to the arbitration" or which requires the parties to do something

_____

[8]In a concurrence, however, Judge Ann Claire Williams wrote that "[e]very court of appeals, including our own," has held that the "manifest disregard" standard encompasses situations where "(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well-defined, explicit and clearly applicable to the case." *Watts*, 248 F.3d at 581–83 (citing *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000), *cert. denied*, 531 U.S. 1075 (2001) and *Health Servs.*, 975 F.2d at 1267; footnote, collecting cases, omitted).

that they "cannot do through an express contract," such as to "form a cartel" or "fix prices or output." *Id.* at 284. Additionally, it reaffirms, as the *Eljer* and *Watts* courts did, 14 F.3d at 1256 and 248 F.3d at 578–79, that applying the incorrect body of law in an arbitration would be a basis for vacatur under § 10(a)(4). *Id.* at 285. ("The . . . contract called for the arbitrators to decide who invented the technology reflected in the patents . . . . If the arbitrators resolved the dispute on some other ground—for example, a belief that one of the inventions is not patentable, or a conclusion that ownership should be shared so that all parties make a profit—the award would be set aside under § 10(a)(4).").

Additional cases decided by other judges of the Seventh Circuit also reaffirm this understanding. *See, e.g.*, *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268–69 (7th Cir. 2006) (Posner, J.) (noting that the Seventh Circuit has accepted a "manifest disregard" ground for vacatur under 9 U.S.C. § 10(a)(4) but "ha[s] confined it to cases in which arbitrators 'direct the parties to violate the law'" (quoting *Watts*, 248 F.3d at 580 and citing *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001))); *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003) (Wood, J.) ("[Under] 9 U.S.C. § 10, the court may consider only whether an arbitrator exceeded the scope of the authority conferred upon her by the parties' actions and agreements. . . . With few exceptions, as long as the arbitrator does not exceed this delegated authority, her award will be enforced. This is true even if the arbitrator's award contains a serious error of law or fact." (citing *N. Ind. Pub. Serv. Co. v. United Steelworkers of Am.*, 243 F.3d 345, 346–47 (7th Cir. 2001); *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam); and *Nat'l Wrecking*, 990 F.2d

at 960)); *Standard Sec. Life Ins. Co. of New York v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (Wood, J.) (same).

With the benefit of these authorities, the Court is unable to accept Stone's argument that *Renard* is the Seventh Circuit's definitive reading of the "manifest disregard" standard for vacatur; if anything, *Renard* appears to be more of an exception to a line of cases construing the vacatur standard narrowly.[9] This narrow view accords with the purpose of arbitration—"swift, inexpensive, and conclusive resolution of disputes," *Watts*, 248 F.3d at 579—which the Seventh Circuit has emphasized time and time again. *Id.* ("If manifest legal errors justified upsetting an arbitrator's decision, then the relation between judges and arbitrators . . . would break down."); *Hyatt*, 876 F.3d at 902 ("Just as an arbitrator is entitled to interpret the parties' contract without judicial review, so an arbitrator is entitled to interpret the law applied to that contract. An agreement to arbitrate is an agreement to move resolution of the parties' disputes out of the judicial system."); *Wise*, 450 F.3d at 269 ("It is tempting to think that courts are engaged in judicial review of arbitration awards under the [FAA], but they are not. . . . When parties agree to arbitrate their disputes they opt out of the court system . . . ." (citing *Baravati v. Josepthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994))); *Eljer*, 14 F.3d at 1254 ("Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review. . . . It is a private system of justice offering benefits of reduced delay and expense. A restrictive standard of review is necessary

_____

[9] Stone's references to the other circuits' reading of the standard, ECF No. 25 at 8 (citing *Wallace v. Buttar*, 378 F.2d 182, 189 (2d Cir. 2004) and *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004)), are therefore irrelevant because they are incompatible with the prevailing view in the Seventh Circuit, which binds this Court.

to preserve these benefits and to prevent arbitration from becoming a 'preliminary step to judicial resolution.'" (citing *Nat'l Wrecking*, 990 F.2d at 960 and quoting *E.I. DuPont de Nemours v. Grasselli Emps. Indep. Ass'n*, 790 F.2d 611, 614 (7th Cir.), *abrogated by United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987))).

For all these reasons, the Court is persuaded that Froedtert more accurately states the prevailing legal standard for vacatur based on an arbitrator's allegedly exceeding his powers, and accordingly the Court will follow that standard in analyzing the parties' substantive arguments.

### 3.1.1.2    Public Policy

Stone next argues that "[c]ourts must also vacate arbitration awards that violate public policy," and accordingly that Frankel's award must be vacated because, by awarding *locum tenens* damages to Froedtert, Frankel violated Wisconsin public policy against double recovery. ECF No. 25 at 8 (citing *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 687 (7th Cir. 1992)); *id.* at 15–16. He concedes that "the leading cases discussing the public policy exception arose in the context of labor disputes," but contends that "the exception is not limited to that context." *Id.* (citing *Team Scandia, Inc. v. Greco*, 6 F. Supp. 2d 795, 802 (S.D. Ind. 1998)).

Froedtert counter-argues that "there is no public policy exception to an arbitration award." ECF No. 21 at 20 (citing *Hyatt*, 876 F.3d at 902–03 and *Four Star Beauty Supply Corp. v. GIB, LLC*, No. 16-C-1351, 2017-WL 6622549, at *1 (E.D. Wis. Dec. 28, 2017) ("[A] party cannot assert a public policy challenge under the FAA. . . . [T]he four ways to vacate an arbitration award enumerated in 9 U.S.C. § 10(a) are 'exclusive' and 'neither judges nor contracting parties can expand' them[.]'" (citing and quoting *Affymax*, 660

F.3d at 284))). Alternatively, if such an exception exists, Froedtert contends, it is only recognized in the collective bargaining arbitration context. *Id.* at 20–21 (collecting cases). In a footnote, Froedtert acknowledges a district court case that "decline[d] to follow [other] district courts finding that the public policy doctrine applies only in the collective bargaining context." *Id.* at 21 n.5 (citing *Zimmer Biomet Holdings, Inc. v. Insall*, No. 22 CV 2575, 2023 WL 2895749, at *6, n.2 (N.D. Ill. Apr. 11, 2023), *aff'd*, 108 F.4th 512 (7th Cir. 2024), *cert. denied*, No. 24-418, 2024 WL 5011731 (U.S. Dec. 9, 2024)).

Unfortunately, Froedtert's position is squarely foreclosed by the subsequent history in *Zimmer*.[10] There, the Seventh Circuit clarified that it "ha[s] never cabined the [public policy exception to confirmation of arbitration awards] to the arbitration of labor disputes." 108 F.4th at 517. Moreover, the court stated that "if a contract—as interpreted by the arbitrators—and the accompanying remedy or relief would violate some explicit public policy, 'we are obliged to refrain from enforcing the arbitration award.'" *Id.* at 516–17 (quoting *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983)). In light of this authority, the Court will consider whether Frankel's award offends public policy.

### 3.1.1.3    Analysis

As noted above, Frankel ordered Stone to pay back Froedtert $180,961.39 in his own net wages and benefits, as well as $849,331.75 in expenses that Froedtert incurred to hire *locum tenens* physicians "as a result of Stone's breach of contract." ECF No. 1-5 at 31. Frankel declined to reduce

---

[10]Why the parties' attorneys—who vigorously briefed nearly every other motion and argument in this case—failed to bring this supplemental authority to the Court's attention is a mystery. *See* Civ. L.R. 7(k).

the *locum tenens* damages amount, rejecting Stone's argument that Froedtert "saved" $616,030.03[11] "in salary and medical director fees by not paying [him] for the months of August[] 2019 [when he resigned] through January[] 2020 [when his replacement was hired]." *Id.* at 21 ("Froedtert fairly argues that this reduction in salary expense is not properly characterized as an actual savings . . . ."); ECF No. 25 at 13, 15. Frankel found that an award of the full amount of *locum tenens* expenses was warranted because Stone failed to carry out "numerous important job duties . . . as a result of his repeated absences" and that the *locum tenens* physicians "merely provid[ed] coverage, rather than filling all of Stone's prescribed job duties" as "a full-time head of a cardiovascular surgery department." ECF No. 1-5 at 21–22.

Stone seeks to vacate this aspect of Frankel's award. ECF No. 25 at 10–16. He says that "[i]t may be true that the replacement surgeons did not precisely duplicate [his] job responsibilities," but he argues that the damage award should nonetheless be offset by the entire amount that Froedtert did not have to pay him in salary and benefits (ostensibly $616,030.03) because the *locums* "unquestionably provided many of the services [he] agreed to provide." *Id.* at 14. In Stone's estimation, therefore, the proper measure of damages that Froedtert incurred to hire *locum tenens* physicians to cover for Stone's absences would be "at most, $233,201.72," which represents the total amount that Froedtert paid for *locum tenens* physicians minus what Stone would have received in salary and benefits. *Id.* at 13 (citing ECF No.

---

[11]During arbitration, Stone gave $607,692.38 as the amount that Froedtert "saved." ECF No. 1-5 at 21. It is not clear where the $616,030.03 figure comes from, but since the parties do not dispute it, ECF No. 25 at 13 and ECF No. 21 at 27, the Court will accept it.

1-5 at 19, 21 23). Vacatur and "further factual development is necessary to determine what, if any, value Froedtert . . . expected under the contract but did not receive from the *locum tenens* surgeons," he argues. *Id.* at 21–22.

Stone first argues that Frankel's *locum tenens* damages award was improper and in violation of Wisconsin contract law because it "placed [Froedtert] in a *better position*" than it would have been had Stone held up his end of the contract. *Id.* at 11 (quoting *Pleasure Time, Inc. v. Kuss*, 254 N.W.2d 463, 469 (Wis. 1977)). Stone spends much of his brief arguing why Frankel misapplied one case in particular, *Handicapped Children's Education Board of Sheboygan County v. Lukaszewski*, 332 N.W.2d 774 (Wis. 1983). *Id.* at 12–15. But as the Court explained in detail *supra* Section 3.1.1.1, an arbitrator's alleged misapplication or misinterpretation of case law is the exact kind of legal error that is not subject to judicial review under Seventh Circuit precedent. Stone is not arguing that Frankel applied an entirely incorrect body of law nor that his award requires the parties to violate the law or the rights of third parties; rather, he is upset that Frankel did not follow his preferred legal analysis. Because these arguments are beyond the scope of review under § 10(a)(4), the Court addresses them no further, and turns instead to Stone's public policy arguments.

To justify setting aside an arbitration award on public policy grounds, the policy "must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Zimmer*, 108 F.4th at 517 (quoting *Chrysler*, 959 F.2d at 687). "An arbitral award most clearly violates public policy when it creates an explicit conflict with statutory laws or well-established and easily discernible precedent." *Id.* at 519 (citing *Titan*

*Tire Corp. of Freeport v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708, 716 (7th Cir. 2013)).

The parties dispute first whether Wisconsin has a clearly-defined public policy against double recovery, and second whether Frankel's award resulted in a double recovery for Froedtert.

In support of the first point, Stone points primarily to the Wisconsin Supreme Court's decision in *Lagerstrom v. Myrtle Werth Hospital-May Health System*, and two further cases that cite it. ECF No. 25 at 15–16 (citing 700 N.W.2d 201, ¶ 35 (Wis. 2005); *Giesie v. Gen. Cas. Co. of Wis.*, 705 N.W.2d 906 (Table), 2005 WL 2347842, *1 (Wis. Ct. App. 2005) (citing *Lagerstrom*, 700 N.W.2d at 210); and *Gronik v. Balthasar*, 118 F. Supp. 3d 1106, 1109 (E.D. Wis. 2015) (citing same)). *Lagerstrom* examined the meaning of a statute permitting admission of "evidence of compensation for bodily injury received from sources other than the defendant . . . in a medical malpractice action to recover damages." 700 N.W.2d at ¶¶ 1, 21–22 (citing Wis. Stat. § 893.55(7)). The statement on which Stone relies is as follows:

> The statute is silent about whether the parties may argue to the fact-finder about the public policies underlying the collateral source rule, such as preventing tortfeasors from benefiting from payments inuring to the victim and deterring tortfeasors. Similarly, the statute does not say whether the *public policies underlying subrogation, such as the prevention of double recovery,* can be argued to the jury. The statute neither prohibits nor allows such arguments. In sum, the text of the statute raises more questions than it answers.

*Id.* at ¶ 35 (emphasis added). Stone acknowledges that *Lagerstrom* is a subrogation case but argues that this detail does not matter: "it is always against public policy to allow a party to secure the windfall of a double recovery," he insists. ECF No. 29 at 11. Moreover, he contends, Wisconsin's

alleged public policy against double recovery stems simply from "logic[]." ECF No. 25 at 16.

Froedtert responds that Stone's proffered case law presents only "generic . . . legal standards, none of which apply here," and further argues that the cases make only passing reference to a public policy against double recovery and/or are not authoritative. ECF No. 21 at 22–23.

The Court agrees with Froedtert. Vacating an arbitration award on public policy grounds requires such a policy to be "well defined and dominant"; "general considerations of supposed public interests" are insufficient. *Zimmer*, 108 F.4th at 517 (quoting *Chrysler*, 959 F.2d at 687). Stone's arguments, by their own terms, rely on such general considerations to frame Wisconsin's public policy against double recovery. This is not a subrogation case, but Stone relies on subrogation case law—more specifically, the Wisconsin Supreme Court's statutory interpretation regarding admissibility of evidence in a subrogation jury trial—as standing for the principle that, as a matter of "logic[]," it is "always" against public policy for "an injured party [to] recover for a loss that it [did not] suffer[]." ECF No. 25 at 16; ECF No. 29 at 11. Stone may be right as a normative matter, but he is appealing to "general considerations of supposed public interests," which under *Zimmer* cannot be a basis for disturbing an arbitral award. 108 F.4th at 517 (quoting *Chrysler*, 959 F.2d at 687). *Lagerstrom*'s connection to the subject matter of this lawsuit is tenuous at best. Stone has not offered any other cases or authority establishing that Wisconsin has a "well defined and dominant" public policy against double recovery applicable in the circumstances in this case. His argument for vacatur fails on this point alone.

The Court is also unconvinced of Stone's argument that the entire $616,030.03 that Froedtert "saved" by engaging temporary physicians, instead of Stone, to render medical services can be considered a double recovery. The Agreement required Stone to render medical services, build a patient base, participate in community engagement efforts, lead a cardiovascular surgery program, and serve as Medical Director of the Heart Institute for a period of at least five years. ECF No. 1-1 at 1–2, 6–7. Although Stone refuses to concede that the *locums* "did not precisely duplicate [his] job responsibilities," ECF No. 25 at 14, it is unreasonable to assume that the *locums* were expected to perform all of the ongoing, long-term responsibilities that Stone undertook in the Agreement because their employment was, by nature, temporary. There is also no reasonable argument that Stone's early departure amounted to a complete cost savings for Froedtert; Froedtert faced the additional and unexpected costs of arranging *locums* coverage and hiring Stone's replacement, and as Frankel noted, faced heightened concerns (and potential liability) for patient safety. ECF No. 1-5 at 12. Simply put, Froedtert had to pay more during August 2019 to January 2020 than it originally bargained to pay Stone during that period, and it got less than it bargained for.

In any event, because the Court concludes that no clear public policy exists to warrant vacatur of the arbitration award, the Court need not parse the actual value of the *locums*' work relative to Stone's or remand the case for further factfinding.

For all these reasons, the Court declines to vacate Frankel's award of $849,331.75 to Froedtert for damages it incurred to engage *locum tenens* physicians in Stone's absence, and Stone's motion to vacate will be denied in this regard.

### 3.1.2   Florida Income Damages

Stone next challenges Frankel's award of $312,230.78 in damages to Froedtert for income that Stone received from the Florida medical center where he worked while also under contract for Froedtert. ECF No. 25 at 16–21. Frankel considered and ultimately awarded this category of damages, which Stone argues violated both the AAA rules that governed the arbitration and tenets of due process because Froedtert disclosed it just days before the arbitration hearing. *Id.* The Court first addresses Stone's rules-violation argument, then his due process argument.

"[A]rbitrators assuredly are bound by the contracts and other rules that give them power to act. An arbitrator who throws aside those rules and implements his 'own brand of industrial justice' oversteps his powers, and the resulting award must be set aside." *Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1004 (7th Cir. 2000) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) and citing *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

The AAA Employment Arbitration Rules, which the Agreement specifies as the rules governing any arbitrable disputes arising under it, do not themselves set timelines for disclosure of evidence, claims, or damages. *See generally* AAA EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES, AM. ARB. ASSOC. (2009) (reproduced at ECF No. 22-6 and available at https://adr.org/sites/default/files/EmploymentRules_Web_3.pdf). However, the AAA has also issued Initial Discovery Protocols, which, "while not mandatory, are presumptively applicable to all AAA employment arbitration cases." INITIAL DISCOVERY PROTOCOLS FOR EMPLOYMENT ARBITRATION CASES, AM. ARB. ASSOC. at 1 (2013) (reproduced

at ECF No. 22-5 and available at https://www.adr.org/sites/default/files/document_repository/Initial-Discovery-Protocols-for-Employment-Arbitration-Cases.pdf). Parts 2(1)(a) and (3)(b) of these Protocols required Froedtert to "describe the categories of damages [it] claim[ed] and the amounts of [those] damages . . . to the extent feasible," "within 30 days after [Stone] ha[d] submitted a responsive pleading or motion, unless the arbitrator rule[d] otherwise." *Id.* at 3.[12]

Stone says that Frankel violated this rule by hearing evidence that was not disclosed until the eve of the hearing and then assessing damages based on that evidence. ECF No. 25 at 18–19. Froedtert responds that the rule requiring disclosure of damages within a specific timeframe binds only the parties, not Frankel, and so cannot be the basis for vacatur, but in any event that Frankel acted within his discretion in entertaining Stone's Florida income as a "new or amended" claim for damages. ECF No. 21 at 24–25 (citing AAA EMPLOYMENT ARBITRATION RULES 5, 28, and 30).

The Court agrees with Froedtert. "After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator." AAA EMPLOYMENT ARBITRATION RULE 5, pp. 5. "[T]he arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems

---

[12]Froedtert attempts to argue that the AAA Initial Discovery Protocols were inapplicable to the arbitration because they are "not incorporated into the AAA Rules." ECF No. 21 at 24. This argument is meritless because the Initial Discovery Protocols themselves say that they are presumptively applicable to arbitrations governed by the AAA Employment Arbitration Rules, AAA INITIAL DISCOVERY PROTOCOLS at 1, and because it appears that the parties stipulated to use the Initial Discovery Protocols. ECF Nos. 19-5 at 2 and 19-6 at 2.

material and relevant to the resolution of the dispute." *Id.*, RULE 28 pp. 20; *see also id.*, RULE 30 pp. 21 ("The arbitrator shall be the judge of the relevance and materiality of the evidence . . . ."). This is just what Frankel did. Over Stone's objection that Froedtert had not timely disclosed the Florida income damages, Frankel found that this claim for damages was valid under the Agreement, that evidence about this claim was therefore relevant and material, and—most importantly—that "Stone failed to articulate how the late disclosure of this item of damage prejudiced him in his defense . . . ." ECF No. 1-5 at 19–20.

Stone ignores this portion of Frankel's ruling and instead mischaracterizes the ruling as entirely premised on Stone having waived his objection to the late disclosure of the Florida income damages by making an untimely disclosure of his own. ECF No. 25 at 19–20 (citing ECF No. 1-5 at 29 and 33). Frankel did note that the parties both "effectively chose[] to litigate these claims in the face of late disclosure by their opponent." ECF No. 1-5 at 33. But this ruling inured partially to Stone's benefit: Frankel permitted him to argue for an offset of the damage award for his salary as Medical Director of the Heart Institute despite having "advance[d] this claim for compensation for the first time post-arbitration hearing." *Id.* at 32–33 & n.14. Frankel's "an eye for an eye" ruling in this respect does not upset his finding that Froedtert's late disclosure of the Florida income damages did not prejudice Stone.

Stone has also failed to articulate how he was actually prejudiced by the late disclosure. He claims that he was "sandbagged and severely prejudiced by this 'arbitration by ambush'" and complains that he was "put at a significant disadvantage in mounting a defense." ECF No. 25 at 18, 21. But he has failed to specify what argument or evidence he would have

offered to rebut the Florida income damages claim if he had had more time to do so. Did he intend to argue that the provision of the Agreement under which Frankel awarded these damages was invalid? Surely not—Frankel found that this provision was "not in dispute." ECF No. 1-5 at 20. Did he intend to challenge the amount of compensation he earned in Florida, and if so, what prevented him from doing that? The best evidence to substantiate his Florida income—his pay stubs—presumably was in his control all along. While the late disclosure of the Florida income damages may have been inconvenient for Stone's attorneys, the Court is not persuaded that Frankel's decision to permit this claim for damages to move forward violated the rules governing the arbitration or prejudiced Stone so greatly that reversal of the award is required.[13]

---

[13]Parenthetically, the Court is also skeptical that Stone had absolutely zero notice of the Florida income damages claim until just before the hearing. He says that in Froedtert's initial specification of claim and its initial discovery responses, it "did not allege that [he] breached the . . . Agreement by improperly earning income in Florida during his employment . . . nor did [it] . . . identify such income as a measure of damages it hoped to recover." ECF No. 25 at 4 (citing ECF No. 19-2 at 3–4 and ECF No. 19-3 at 5–6).

This is only partially accurate. The specification of claim explicitly contended that Stone "breached ¶ 1.4 . . . of the Agreement"—the provision that limited Stone from performing outside medical business or practice without Froedtert's consent. ECF No. 19-2 at 2; ECF No. 1-1 at 2. It also asserted that Stone's absences from Froedtert were due to his attempts to maintain full-time employment both there and at a medical center in Florida, though it did not overtly connect this assertion to its claim that Stone breached the aforementioned provision. ECF No. 19-2 at 3.

Froedtert also later stated in its March 2021 initial discovery responses that it anticipated seeking testimony from a representative of the medical center in Florida "regarding . . . Stone's employment and compensation, including the time period that contractually required [him] to be employed full-time at Froedtert South." ECF No. 19-3 at 4. (Froedtert was represented by different attorneys at these two stages of the case. ECF No. 19-2 at 5 (specification of claim signed by

Stone's due process argument fares no better. "[A]n arbitrator must provide a fundamentally fair hearing." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997) (citing *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992); *Hoteles Condado Beach v. Union De Tronquistas*, 763 F.2d 34, 40 (1st Cir.1985); and *Hall v. E. Air Lines, Inc.*, 511 F.2d 663, 663–64 (5th Cir. 1975)). "A fundamentally fair hearing is one that 'meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.'" *Id.* (quoting *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir. 1987) (internal quotation marks omitted)). "Nevertheless, parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Id.* (footnote omitted).

Stone protests that he was deprived of a fair hearing because he "was not permitted to gather additional evidence" or "identify, prepare, and present a witness" related to the Florida income damages claim. ECF No. 25 at 20–21. As explained above, Stone has failed to describe to the Court how this evidence or testimony would have helped his case. The Court therefore cannot conclude that Stone was "denied . . . the opportunity to a meaningful hearing" in a manner that justifies vacatur. *Generica*, 125 F.3d at 1131 (collecting cases).

---

Attorney Deborah Krukowski); ECF No. 19-3 at 11 (initial discovery disclosures signed by attorneys from Michael Best & Friedrich LLP).)

However, Stone is correct that in these two submissions, at no point did Froedtert specify Stone's Florida employment income as a distinct category of damages it was seeking. *See generally* ECF Nos. 19-2 and 19-3.

Finding that there is no reason to vacate Frankel's award of $312,230.78 in damages for the income that Stone earned through his employment in Florida while he was simultaneously under contract with Froedtert, Stone's motion to vacate will be denied in this regard.

### 3.1.3    Modification of Award

Stone argues that, if the Court does not vacate the award, it should "modify [it] to eliminate the portions that resulted directly from [Frankel's] misconduct." ECF No. 25 at 21–23 (citing 9 U.S.C. §§ 10(a)(4) and 11). Section 10(a)(4) provides only for vacatur, not modification, of awards, so does not permit the Court to do what Stone is asking. Section 11 permits the Court to "modify[] or correct[]" an arbitration award

> (a) [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]

> (b) [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; or]

> (c) [w]here the award is imperfect in matter of form not affecting the merits of the controversy.

Stone does not specify which of these grounds he believes justifies modification, but none applies here. Section 11(a) is for correcting "simple formal, descriptive, or mathematical mistake[s]" and "does not apply to 'an interpretation of the law and facts as [the arbitrator] saw them.'" *J&J Sports Prods.*, 2017 WL 6622548, at *2 (quoting *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 749 (8th Cir. 1986) and *Cap. Wholesale Elec., Inc. v. McCarthy Constr.*, 50 F.3d 13, 1995 WL 105987, at *2 (9th Cir. 1995)). Stone is not arguing that Frankel made a mathematical error; he is challenging the legal analysis and procedural rulings that led to Frankel's conclusions.

Similarly, he is not arguing that Frankel made an award on a matter not submitted to him (quite the opposite, at least with respect to the Florida damages—Stone challenges Frankel's decision *to permit* evidence on this issue), so subsection (b) does not apply. Similarly, his arguments are not that the award is "imperfect" in a way that is not material to the merits of this case, but rather that Frankel got the merits wrong, so subsection (c) also does not apply. Stone's attempt to rebrand his substantive arguments for vacatur as arguments for modification under § 11 is inappropriate, bordering on frivolous, and must be denied.

For all these reasons, Stone's motion to vacate or modify will be denied in full. Because the Court has upheld Frankel's award of damages to Froedtert, the Court will also disregard Stone's arguments that his award of attorneys' fees to Froedtert as the prevailing party was "derivatively improper." ECF No. 25 at 2.

### 3.2 Petition to Confirm Arbitration Award

Having concluded that Stone's motion to vacate or modify the arbitration award is without merit, there is no barrier to confirming the award. 9 U.S.C. § 9; ECF No. 1-1 at 12 (noting that arbitration award is binding and "judgment upon such award may be entered in any court of competent jurisdiction"); ECF No. 14 at 1 (Stone answer to confirmation petition, admitting that this Court has jurisdiction over this case).

As the Court explained *supra* notes 4 and 5, Frankel's final award, ECF No. 1-3, appears to contain a typographical error as to the amount of damages to which Froedtert is entitled. Frankel himself corrected the error in an earlier interim award, ECF No. 1-9 at 3, and the parties do not otherwise dispute the amounts that Frankel arrived at in fashioning the final award. The Court will therefore modify Frankel's final award to reflect

Case 2:23-cv-01702-JPS     Filed 02/07/25     Page 29 of 36     Document 33

the correct damages amount of $1,300,333.92. *See* 9 U.S.C. § 11; *Herrington v. Waterstone Mortg. Corp.*, No. 11-CV-779-BBC, 2017 WL 6001866, at *4 (W.D. Wis. Dec. 4, 2017), *vacated and remanded on other grounds*, 907 F.3d 502 (7th Cir. 2018) (correcting a "mathematical error" in final award about which "the parties agree[d]").

Subject to this correction, Froedtert's petition to confirm the arbitration award will be granted, and judgment will be entered pursuant to 9 U.S.C. § 13.

Froedtert additionally seeks post-judgment interest and its attorneys' fees, costs, and expenses under § 8.3 of the Agreement. ECF No. 1 at 4. Froedtert does not state under what statute or rule it seeks post-judgment interest, and the Agreement does not provide any applicable rate. Frankel did not order Stone to pay interest on the final award from the date it was entered. *See* ECF No. 1-3. But in any case, Stone offers no opposition to the request for post-judgment interest, and the Court sees no barrier to granting it. Froedtert is entitled to post-judgment interest, from the date of judgment in this matter, pursuant to 28 U.S.C. § 1961.[14]

With respect to Froedtert's request for attorneys' fees, costs, and expenses, § 8.3 of the Agreement provides that the "prevailing party in any arbitration or litigation to enforce any provision of this Agreement shall be entitled" to "court costs, attorneys' fees and other reasonable arbitration and/or litigation expenses." ECF No. 1-1 at 12. Stone has not disputed the validity of this provision in the Agreement. Under Wisconsin law, which governs the Agreement, *id.* at 12, attorneys' fees are recoverable in limited

---

[14]However, "[e]xpressly awarding such interest as part of the judgment is redundant," *Pace Commc'ns, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir. 1994), so the judgment need not reflect it.

circumstances, including "where the parties contract for the award of attorney fees." *Est. of Kriefall v. Sizzler USA Franchise, Inc.*, 816 N.W.2d 853, ¶ 72 (Wis. 2012) (citing *Meas v. Young*, 417 N.W.2d 55, 57 (Wis. Ct. App. 1987)); *see also Hunzinger Constr. Co. v. Granite Res. Corp.*, 538 N.W.2d 804, 809 (Wis. Ct. App. 1995) (holding that a party is generally only "obligat[ed] to pay attorneys' fees . . . [where] the contract provision clearly and unambiguously so provides" (citing *Bank of Maine v. Weisberger*, 477 A.2d 741, 745 (Me. 1984) and *Wheeling Tr. and Sav. Bank v. Citizens Nat'l Bank*, 491 N.E.2d 866, 870 (Ill. 1986))).

Frankel already determined that Froedtert was the prevailing party in the arbitration, calculated its attorneys' fees, and ordered Stone to pay them. ECF No. 1-3 at 2. Having denied Stone's motion in its entirety and granted Froedtert's petition to confirm the arbitration award, Froedtert is the prevailing party in this litigation and accordingly is entitled to its costs, attorneys' fees, and expenses under § 8.3 of the Agreement.

Entry of judgment need not be delayed to allow for a determination of the amounts of costs, attorneys' fees, and expenses associated with this litigation. *See Exch. Nat'l Bank of Chi. v. Daniels*, 763 F.2d 286, 291–94 (7th Cir. 1985); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 ("[A] claim for attorney's fees is not part of the merits of the action . . . [because] [s]uch an award does not remedy the injury giving rise to the action . . . ."). The Court encourages the parties to make their best efforts to resolve these amounts without further judicial involvement.

### 4. MOTIONS TO RESTRICT

The parties have also filed a bevy of motions to restrict documents, some of which are opposed and others of which are agreed. ECF No. 2 (unopposed motion to restrict certain exhibits to Froedtert's petition to

confirm arbitration award, ECF Nos. 1-1, 1-4–1-11, and 2-2); ECF No. 18 (unopposed motion to restrict exhibits to declaration in support of Stone's motion to vacate, ECF No. 19); ECF No. 20 (motion to restrict, contested as to Froedtert's brief in opposition to Stone's motion to vacate, ECF No. 21, but unopposed as to exhibits to declaration in support of brief in opposition, ECF No. 22); ECF Nos. 23, 27, 30 (contested motion to restrict Stone's motion to vacate and supporting brief, ECF Nos. 16 and 17); ECF Nos. 28, 31, 32 (contested motion to restrict Stone's reply brief to motion to vacate, ECF No. 29).

When it filed its confirmation petition, Froedtert sought to restrict most of the exhibits attached thereto. ECF No. 2. First, it sought to restrict the Agreement, which is confidential by its own terms. *Id.* at 2; ECF No. 1-1 at 13. Second, it sought to restrict Exhibits 4 through 11 to its petition—"various [i]nterim [a]wards, [o]rder[s], and filings by the parties in the [a]rbitration"—because in the underlying arbitration, the parties stipulated to a protective order, and Frankel ordered "that both sides treat the constituent elements of this case in a confidential manner." ECF No. 2 at 1–2 (citing ECF Nos. 2-1 (protective order) and 2-2 (Frankel ordering that the arbitration remain confidential)). Froedtert acknowledged that it did not confer with Stone about its motion to restrict but "anticipate[d] Stone w[ould] want these documents sealed." *Id.* at 2.

As mentioned *supra* note 1, Stone initially filed his motion to vacate or modify and supporting brief publicly, despite the fact that his motion and brief extensively reference material that Froedtert sought to restrict pursuant to the parties' agreements in arbitration, and which Froedtert believed that Stone himself would want to remain under restriction. Twenty days after submitting these filings publicly, and this time over

Froedtert's objection, Stone filed a motion to restrict these filings, and they were placed provisionally under restriction. ECF No. 23.

Froedtert argues that Stone should not be able to "present[] a one-sided and inaccurate public account of [his] actions," ECF No. 21 at 3 n.1, while simultaneously getting the benefit of the parties' agreement to maintain the confidentiality of the arbitration proceedings. Therefore, Froedtert opposes Stone's motions to restrict insofar as he has intentionally waived the confidentiality of the arbitration proceedings. *See* ECF No. 20 at 2–3. In other words, Froedtert argues, if the Court finds that Stone made public filings referencing confidential information on purpose, then he has waived the confidentiality of the underlying proceedings and there is no longer good cause to keep the parties' briefs or many of the arbitration materials under restriction. *Id.*; ECF No. 21 at 3 n.1 (citing *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014) ("The parties have agreed in asking us to seal certain documents that have been introduced in the arbitration hearing. Their agreement is not binding on us.") and *Gove v. Sargento Foods, Inc.*, No. 18-cv-1335-pp, 2023 WL 3953287, at *7 (E.D. Wis. June 11, 2023) ("Because the defendant did not limit the portions of the documents which will be unavailable to the public and did not demonstrate "good cause" under Seventh Circuit precedent to seal the requested documents, the court will deny the defendant's motion to seal . . . .")).

Stone insists that his failure to file his motion and brief under restriction was inadvertent and that "inadvertent disclosures . . . do not nullify" the parties' agreements to maintain the confidentiality of the arbitration proceedings. ECF No. 30 at 1. He further accuses Froedtert of "depart[ing] from professional norms of courtesy and collegiality." *Id.*

Quarrels such as these, which invite the Court to weigh the credibility of one side's attorneys against the other's, reflect a failure on counsel's part to resolve procedural issues in good faith. They test the Court's patience and, frankly, are not a good use of clients' time and money—the briefing on the contested motions to restrict totals over fifty pages.

In any event, the Court finds that there is no reason to reveal publicly what the parties earlier agreed to maintain under confidentiality. To be sure, Stone's twenty-day delay in noticing and rectifying the public filing of his motion and brief—as well as the fact that he accompanied his motion and brief with a motion to restrict exhibits attached to a declaration in support thereof, indicating that he *knows* how to seek the restriction of filings by motion—could support a finding of intentional conduct. On the other hand, the fact that he swiftly moved to correct the issue once it was brought to his attention by Froedtert's counsel could support a finding that his oversight was inadvertent. Ultimately, though, Froedtert itself seeks to retain the benefits of a confidential arbitration and only opposes Stone's restriction requests on the basis that the parties' confidentiality agreements should be applied equally. Because the parties, at the end of the day, want the same thing, the Court will not stand in their way.

Accordingly, all motions to restrict in this matter—ECF Nos. 2, 18, 20, 23, and 28—will be granted, and all the documents subject to them will remain under restriction.

Importantly, this Order will be publicly available, even though it references some facts that are contained in restricted filings. The parties' confidentiality agreements do not bind this Court. Moreover, the parties made the decision to move this dispute into a public forum, and "litigation

[should] be conducted in public to the maximum extent consistent with respecting . . . facts that should be held in confidence." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) (collecting cases). So while the Court will permit the parties' filings to remain under restriction, this Order need not be. *See id.* ("[B]oth judicial opinions and litigants' briefs must be in the public record, if necessary in parallel versions—one full version containing all details, and another redacted version with confidential information omitted.").

**5.     CONCLUSION**

For the reasons stated herein, Stone's motion to vacate or modify the arbitration award will be denied and Froedtert's petition to confirm the award will be granted. As discussed *supra* Section 3.2, Frankel's final award, ECF No. 1-3, will be corrected to reflect his determination of the correct damages amount of $1,300,333.92, ECF No. 1-9 at 3, and will otherwise be confirmed and reflected in the judgment.

Accordingly,

**IT IS ORDERED** that Petitioner Froedtert South, Inc.'s petition to confirm the arbitration award, ECF No. 1, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Arbitration Award of December 6, 2023, be and the same is hereby **CORRECTED** to reflect that Petitioner Froedtert South, Inc. is entitled to $1,300,333.92 in damages;

**IT IS FURTHER ORDERED** that the Arbitration Award of December 6, 2023, be and the same is hereby **CONFIRMED as corrected**; Respondent Christopher Stone shall pay to Petitioner Froedtert South, Inc. the sum of $1,300,333.92 in damages together with $922,066.47 for its attorneys' fees;

**IT IS FURTHER ORDERED** that Respondent Christopher Stone's motion to vacate or modify the arbitration award, ECF No. 16/24, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the motions to restrict, ECF Nos. 2, 18, 20, 23, and 28, be and the same are hereby **GRANTED**; the documents subject to these motions will be maintained under restriction; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of February, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge